John Burton, State Bar No. 86029
THE LAW OFFICES OF JOHN BURTON
414 South Marengo Avenue
Pasadena, California 91101
Tel: (626) 449-8300; Fax: (626) 449-4417

Maria Cavalluzzi, State Bar No. 128377
LAW OFFICES OF CAVALLUZZI & CAVALLUZZI
9200 Sunset Boulevard, Suite 807
Los Angeles, California 90069
Tel: (310) 246-2601; Fax: (310) 246-2606

Attorneys for Plaintiff Michael Walker

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WALKER<br><br>       Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, CHIEF WILLIAM BRATTON, LAPD DETECTIVE STEVEN MOODY, LAPD DETECTIVE ROBERT PULIDO, LAPD DETECTIVE RICHARD RECORD, and DOES 1 to 10,<br><br>       Defendants. | Case No. CV08-04707 R (FFMx)<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS UNDER COLOR OF STATE LAW**<br><br>**DEMAND FOR JURY TRIAL** |

### JURISDICTION AND VENUE

1.   This case arises under 42 U.S.C. § 1983. Accordingly, subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

2.   Plaintiff's claims arise out of a course of conduct involving officials of the City of Los Angeles, in the County of Los Angeles, State of California, and within this judicial district.

## PARTIES

3. Plaintiff Michael Walker is an adult competent to sue. He is an African-American male.

4. Defendant City of Los Angeles is a legal and political entity established under the laws of the State of California, with all the powers specified and necessarily implied by the Constitution and laws of the State of California and exercised by a duly elected Mayor, and various agents and officers. Defendant Los Angeles Police Department (LAPD) is a public agency. At the times relevant hereto, defendant William Bratton was the Chief of Police and is sued in both his official and individual capacities.

5. Defendants Steven Moody, Robert Pulido and Richard Record are LAPD detectives. In committing the acts herein alleged, each acted within the scope of his respective employment and under color of state law.

6. The true names of defendants Does 1 through 10 are presently unknown to plaintiff, who therefore sues each of these defendants by such fictitious name; but upon ascertaining the true identity of a defendant Doe, plaintiff will amend this Complaint or seek leave to do so by inserting the true name in lieu of the fictitious name. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that each defendant Doe herein is in some manner responsible for the injuries and damages herein alleged.

## FACTS

7. Beginning in the early summer of 2005, a series of robberies occurred in central Los Angeles in which the perpetrator was a middle-aged African-American male simulating a weapon and using a demand note. On August 13, one such robbery occurred at EB Games, a business located at 3701 South La Brea Avenue. The perpetrator, an African-American man, entered the store as if he were a customer, placed some video games on the counter, handed the clerk a note reading: "This is a robbery, give me all the money in the register," and moved his hand toward his waistband as if reaching for a gun.

He obtained money and fled on foot. Fingerprints subsequently lifted from the video games were preserved as evidence.

8. On August 16, plaintiff Michael Walker innocently entered the same store as a customer. Witnesses to the August 13 robbery mistakenly thought Mr. Walker might be the perpetrator. Police were called and plaintiff arrested. After his arrest, Mr. Walker was interviewed by defendant Detective Steven Moody, who was assigned to Southwest Division. Mr. Walker waived his right to remain silent and steadfastly denied any involvement in the crime.

9. On August 17, Detective Moody prepared a report stating: "The suspect's M.O. is to enter the business posing as a customer, present a demand note to the cashier, take cash and leave on foot. The suspect has on occasion simulated and/or displayed a handgun." Detective Moody incorrectly claimed Mr. Walker was this "Demand Note Robber" seen "committing numerous robberies on videotape and still photographs." As a result of the false report, a complaint alleging one count of robbery was filed against Mr. Walker on August 18.

10. The next day, August 19, 2005, a robbery involving an African-American male and the same modus operandi, a demand note, occurred at a local Burger King. The same day, an attempted robbery occurred at The Golden Bird, a restaurant in Southwest Los Angeles. The suspect again was an African-American male who presented a demand note. Responding LAPD officers obtained the security videotape. Detective Moody was the investigating officer for both crimes and conducted the follow-up investigation, which included watching the videotape. Detective Moody saw that the suspect on the videotape, rather than plaintiff, was in fact the "Demand Note Robber." Detective Moody deliberately suppressed this fact to conceal the mistakes he made in his August 17 report.

11. On August 30, 2005, LAPD Robbery Homicide Division (RHD) detectives assumed investigative responsibility for a connected series of robberies occurring in Los Angeles. RHD's suspect was an African-American male who targeted video stores and other businesses posing as a customer. His modus operandi was to present a demand note

which sometimes read: "You have 5 seconds or I will start shooting." The suspect was dubbed "The 5-Second Bandit." The subject was, in fact, the same person as the "Demand Note Robber." Bulletins were disseminated and posted at various LAPD locations, including Southwest Division, requesting reports involving similar robberies.

12. On August 31, 2005, RHD requested reports involving similar crimes from defendant Detective Robert Pulido at Southwest Division. Detective Pulido knew the status of Detective Moody's "Demand Note Robber" investigation and deliberately withheld the information from RHD. Detective Moody, as well, deliberately withheld the "Demand Note Robber" reports from RHD and deliberately avoided mentioning the arrest of Mr. Walker to RHD detectives.

13. During September 2005, the prints on the EB Games boxes handled by the perpetrator came back as not Mr. Walker's. Nevertheless, Detective Moody pressed forward to convict him of crimes Detective Moody knew he did not commit. Disregarding the overwhelming exculpatory evidence then known to him, Detective Moody prepared an unfair and suggestive photographic lineup to be viewed by witnesses to various robberies. Because of the unfair lineup, and the suggestive manner in which Detective Moody presented it, four of the witnesses tentatively identified Mr. Walker as a robbery suspect. All the witnesses who failed to identify Mr. Walker, however, were deliberately omitted from Detective Moody's reports.

14. On September 14, Detective Moody submitted the reports for the numerous robberies which he attributed to Mr. Walker – the "Demand Note Robber" – to Los Angeles Deputy District Attorney (DDA) Ann Huntsman, who instructed him to schedule a live lineup for the witnesses who had tentatively identified Mr. Walker from the photo lineup.

15. Coincidentally, on September 14, 2005, Stanley Smith was arrested by the Los Angeles Sheriff Department for a robbery of a Blockbuster video rental store in Lawndale by an African-American male using a demand note. The deputies contacted the LAPD regarding the robbery and the suspect in custody.

16. RHD detectives interviewed Mr. Smith, who admitted to perpetrating about two robberies a week in the Los Angeles area to support his cocaine habit.

17. On September 16, DDA Huntsman moved the Superior Court for an order compelling Mr. Walker to appear in a live lineup, referring to thirteen robberies with similar modus operandi, occurring between June 27 and August 15, 2005. Ms. Huntsman conceded that the identifications in the photographic lineups were "rather tentative." At the live lineup on October 10, 2005, two witnesses identified Mr. Walker as perpetrating a robbery. (On September 28, 2005, a live lineup was held with suspect Stanley Smith. Twelve of seventeen witnesses identified Stanley Smith as the perpetrator of robberies they witnessed.)

18. Detective Moody prepared a follow up investigation report dated November 11, 2005 listing twelve robberies plaintiff supposedly committed as the "Demand Note Robber," and falsely claiming that the crime spree ended with his August 16 arrest. The report contains numerous misstatements and omits material exculpatory information and evidence, including, among other things, the fact that "Demand Note" robberies continued in the area for the next month.

19. On January 26, February 2, and June 27, 2006, new complaints were filed by the District Attorney's office against Mr. Walker, resulting in his ultimately being charged with eight counts of robbery, including the one at EB Games, the cause of his arrest. After a preliminary hearing on September 7 and 11, 2006, Mr. Walker was held to answer to five counts of robbery, all except the EB Games crime based solely on the eyewitness identifications made first from Detective Moody's suggestive photo lineup. Mr. Walker's counsel did not have the exculpatory evidence suppressed by defendants.

20. Beginning February 7, 2006 – seven months before the preliminary hearing – Mr. Walker's counsel made repeated discovery requests to the District Attorney's Office, including demands for all exculpatory evidence. Nothing was turned over regarding the subsequent crimes with the same modus operandi, nor was the arrest of Stanley Smith disclosed.

21. In a discovery letter dated November 7, 2006, Mr. Walker's counsel explicitly requested "All police reports, from 1/05 to the present, documenting robberies in the area of Baldwin Hills Plaza and Crenshaw Business District, and surrounding areas, with the same or similar 'MO' - male black suspect enters a business posing as a customer, presents a 'demand note' to the cashier, takes cash and leaves." Still nothing was turned over.

22. At a March 13, 2007 discovery hearing, Mr. Walker's counsel again requested reports of robberies involving a similar modus operandi occurring after the date of his arrest. His counsel had received no reports regarding robberies following his arrest, although the Southwest Division detectives were, at minimum, aware of the two similar crimes on August 19, 2005 – the Burger King and Golden Bird holdups – both of which had been assigned to Detective Moody for investigation. The trial court ordered "that the detective will look through the crime reports for Southwest Division starting with the date of [Mr. Walker's] arrest, 8/16/05, and also look at September, October and November '05 and pull all of those crime reports." At this time, Detective Moody had retired and a newly assigned detective was ordered to "Review all the crime reports and see whether there are any business robberies involving male black suspects where there was a demand note that was presented."

23. The reports of the robberies which occurred on August 19, 2005 at the Golden Bird restaurant and at Burger King were finally turned over on May 2, 2007, 21 months after they were known to Detective Moody as well as Detective Robert Pulido. Subsequently, after his counsel read the report and requested the videotape of the Golden Bird crime, LAPD representatives claimed that it was destroyed on November 9, 2006, two days after the written discovery request. The destruction of this highly exculpatory evidence was authorized by defendant Detective Richard Record.

24. Sensing that more exculpatory evidence was being concealed, Mr. Walker's counsel subpoenaed LAPD Communications for records of all calls referring to robberies in the Southwest Division or nearby areas involving a similar method to that of the

"Demand Note Robber." In apparent response to that subpoena, on or about October 22, 2007, Southwest Division detectives finally revealed the many robberies investigated by RHD involving a similar method as those robberies being charged against Mr. Walker.

25. Upon receiving the reports referring to Stanley Smith as the perpetrator of similar robberies, Mr. Walker's expert compared the fingerprints lifted from the EB Games boxes with Mr. Smith's prints, and determined that the fingerprints were a match. On November 26, 2007, an LAPD fingerprint expert reported the same conclusion.

26. As a result, all the charges against Michael Walker were dismissed November 26, 2007, and he was released from custody, having spent more than 27 months behind bars for robberies defendants knew within the first week of his arrest that Mr. Walker did not commit.

**DAMAGES**

27. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the defendants, plaintiff suffered and will continue to suffer great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused plaintiff to sustain damages in a sum to be determined at trial.

28. As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the defendants, plaintiff suffered past and future losses of income which have caused him to sustain damages in a sum to be determined at trial.

29. As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the defendants, plaintiff Michael Walker incurred legal and medical expenses, and will incur future medical expenses, which have caused this plaintiff to sustain damages in a sum to be determined at trial.

30. The individually named and doe defendants, excluding defendants City of Los Angeles and Los Angeles Police Department, acted outside the scope of their jurisdiction and without authorization of law, and separately and in concert. The

aforementioned acts of the defendants, and each of them, was willful, wanton, malicious and oppressive, with reckless disregard or with deliberate indifference and with the intent to deprive plaintiff of his constitutional rights and privileges, and did in fact violate the aforementioned rights and privileges, entitling plaintiff to exemplary and punitive damages in an amount to be proven at the trial of this matter.

## FIRST CLAIM FOR RELIEF
## DEPRIVATION OF CIVIL RIGHTS -- 42 U.S.C. § 1983
(Fifth and Fourteenth Amendments – Individual Liability)

31. The individual and doe defendants deprived plaintiff of his federal constitutional right to procedural and substantive due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, by doing, among other things, the following:

(a) Continuing their investigation of plaintiff despite the fact that they knew or should have known that he was innocent,

(b) Using investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information.

(c) Concealing, withholding and destroying exculpatory evidence, depriving plaintiff and his counsel from using such evidence in plaintiff's defense.

(d) Misrepresenting facts and omitting material exculpatory information from police reports, and presenting false and misleading police reports to prosecutors to overcome the prosecutor's independent judgment and cause plaintiff to be prosecuted for a series of robberies in which he had no involvement whatsoever.

32. The above acts and omissions had no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the conscience, are fundamentally unfair, arbitrary and oppressive, and unrelated to any activity in which governmental officers may appropriately and legally undertake in the

course of protecting persons or property, or ensuring civil order.

## SECOND CLAIM FOR RELIEF
## DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. § 1983
(Entity Liability)

42. Defendants City of Los Angeles, LAPD and Chief Bratton, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of plaintiff, including the right to procedural and substantive due process, and to not be prosecuted based on suppression of exculpatory information, falsified evidence or unfairly obtained eyewitness identifications, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, the following policies, practices and customs:

(a) Failing to adequately train, supervise, and control its detectives in thorough and ethical crime investigations;

(b) Failing to adequately train, supervise, and control its detectives in the proper presentation of photographic lineups so as to avoid wrongful identification of innocent parties;

(c) Failing to adequately train, supervise, and control its detectives in reporting and providing all exculpatory evidence to defense counsel as well as prosecutors;

(d) Failing to adequately train, supervise, and control its detectives in the preservation of exculpatory evidence, and to prevent the destruction of such evidence;

(e) Failing to adequately maintain systems to insure that exculpatory evidence in investigations of serial crimes is turned over to criminal defendants;

(f) Failing to adequately train, supervise, and control its detectives in preparing reports that include all relevant information and only truthful and accurate statements;

(g) Failing to insure that different detectives within the LAPD share information regarding serial crimes, such as robberies, and make them available to counsel for

criminal defendants;

(h)   Failing to adequately train, supervise, and control its detectives and officers from giving false testimony under oath in criminal proceedings;

(i)   Failing to adequately train, supervise, and control its detectives in protecting the substantive and procedural due process rights of arrestees to be free from malicious prosecutions and prosecutions based on falsified evidence or based on incomplete information due to the withholding of exculpatory evidence.

(j)   Failing to adequately discipline detectives and officers involved in dishonesty or otherwise abusing their authority; and

(k)   Condoning and encouraging their detectives officers in the belief that they can violate the rights of persons such as the plaintiff in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

43..   As a direct and proximate result of the foregoing, plaintiff sustained injury and damage as proved.

# PRAYER

WHEREFORE, plaintiff requests relief as follows, and according to proof, against each defendant:

1. General and compensatory damages in an amount according to proof;
2. Special damages in an amount according to proof;
3. Exemplary and punitive damages against each individual and doe defendant, not against the City of Los Angeles or the Los Angeles Police Department, in an amount according to proof;
4. Costs of suit, including attorneys' fees, under 42 U.S.C. § 1988; and,
5. Such other relief as may be warranted or as is just and proper.

Dated: July 8, 2007     THE LAW OFFICES OF JOHN BURTON

THE LAW OFFICES OF
CAVALLUZZI & CAVALLUZZI

By: _____
John Burton
Attorneys for Plaintiff

# DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury.

Dated: July 8, 2007     THE LAW OFFICES OF JOHN BURTON

THE LAW OFFICES OF
CAVALLUZZI & CAVALLUZZI

By: _____
John Burton
Attorneys for Plaintiff

- 11 -